IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 23-CR-1165 KWR |
| | ) |
| **DWAYNE A. CALVERT**, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES'
SENTENCING MEMORANDUM**

The United States respectfully submits this *Sentencing Memorandum* for this Court's consideration in advance of Defendant's sentencing, which is set for May 29, 2024. The United States asks this Court to accept Defendant's guilty plea and the parties' *Plea Agreement*, (Doc. 27), and sentence Defendant to a five-year period of incarceration. (*Id*. ¶ 11a).

**FACTS**

The United States does not dispute the facts in Officer Stacy Hawkins' *Presentence Investigation Report*. (Doc. 30, ¶¶ 9-15). The United States supplements Officer Hawkins' filing with this broader recitation of the operative facts.

**Defendant commits the crime.**

At about 9:00 p.m. on Friday, July 1, 2022, 23-year-old D.Q. and her two cousins arrived at the Double O Bar & Night Club at Ohkay Hotel Casino. D.Q. indulged in alcohol. She was drunk when Aisha Aguino and Joseph Trujillo (boyfriend and girlfriend) arrived at 11:00 pm. Aisha and D.Q. were not close friends, but their parties spent the evening drinking together. The group continued to drink until Double O closed at 2:00 a.m. Not wanting the night to end, they

headed to Aisha's apartment for a nightcap.

Then-33-year-old family friend Dwayne Calvert (Defendant) was babysitting Aisha's son at Aisha's apartment while Aisha and Joseph were at Double O. After Aisha's group returned to Aisha's apartment after 2:00 a.m. on Saturday, July 2, 2022, Defendant's role shifted from babysitter to partygoer.

D.Q. was extremely drunk when she got to Aisha's apartment. She nevertheless continued to drink until she fell from a chair, which convinced Aisha that D.Q.'s night was over. Aisha put D.Q. to bed on Aisha's couch. The party continued as D.Q. slept.

At roughly 3:30 a.m., the party concluded. Defendant asked to sleep over, which Aisha thought was odd because Defendant had been drunk at her apartment before and still managed to get himself home; Aisha nevertheless allowed Defendant to sleep over. Aisha and Joseph retired to their upstairs bedroom, leaving D.Q. asleep on the couch. Defendant was to sleep on a mattress on the living-room floor.

Not 10 minutes later, Aisha heard a loud moan from downstairs, which prompted she and Joseph to investigate. Proceeding down the stairs, the couple saw Defendant naked on top of D.Q., having sex with her. D.Q. was not awake. Per Aisha: *"He was on top of her, like with his penis inside of her. I actually saw."* Aisha and Joseph startled Defendant, who said the sex was consensual. Not believing Defendant, Aisha yelled and hit Defendant. Defendant gathered his clothes and left the apartment, but not before Aisha made Defendant re-clothe D.Q.

D.Q. was unconscious throughout. After Defendant left, Aisha remained by D.Q.'s side. D.Q. urinated on the couch as she slept.

D.Q. awoke the next morning in a drunken fog. She briefly wandered outside and knocked

on a neighbor's door, which made Aisha spring into action to rescue D.Q. and bring her back to the apartment.

Once D.Q. was lucid, Aisha told her about the crime. D.Q. had no memory of it. They called police to report it. As they waited, Defendant returned unexpectedly to retrieve his baseball glove. Defendant apologized to Aisha and D.Q.

**D.Q.'s SANE exam.**

D.Q. underwent a SANE exam that morning. She said she had "more alcohol than I can tell you." She had no memory of the rape. She denied being in any pain and had no injuries. In June 2023, undersigned counsel obtained the NMDPS Lab Report for serological testing performed upon items in D.Q.'s SAEK. Human male DNA was detected on several items, but in an insufficient quantity for conventional STR-DNA testing. The scientist noted these items "may be eligible for male Y-STR DNA testing; however, a male DNA standard must be submitted prior to testing." BIA thus executed a DNA warrant for Calvert's DNA. Comparison testing is still pending.

**D.Q.'s recorded interview.**

D.Q. was interviewed on July 14, 2022. D.Q. said she was 10-out-of-10 on the drunkenness scale. She had no idea what happened until Aisha told her the next morning. She did not recall anything after leaving Double O.

D.Q. does not know Defendant, other than being casual acquaintances. Defendant has made her feel uneasy since she was a child, as he often stared at her. Prior to that night she had never spoken to Defendant, and the two were certainly not in a romantic relationship.

**Aisha Aguino's recorded interview.**

Aisha was interviewed on November 10, 2022. Aisha explained that Defendant is family to her, and that she knows Defendant far better than D.Q.; however, she felt compelled to tell the truth regarding this crime. Aisha confirmed D.Q. was extremely intoxicated that night. She did not see Defendant interact with D.Q. at her apartment. Aisha saw Defendant's penis in D.Q. when she went downstairs to investigate the unusual noise. D.Q. was unconscious prior to the rape, during the rape, and after the rape.

**D.Q.'s post-plea interview with Officer Hawkins.**

Officer Hawkins spoke with D.Q. on March 15, 2024. (Doc. 30, ¶¶ 17-19). Even 623 days after Defendant raped her, D.Q. spoke of the lingering effects of Defendant's criminality, such as continued "PTSD moments" and panic attacks. She fears returning to Ohkay Owingeh because of Defendant's family, (*Id*. ¶ 17), and no longer participates in tribal events. (*Id*. ¶ 18). Her familial relationships are strained. (*Id*.). She has been unable to fully cope mentally, which caused her to resign from her "dream" job of being a social worker. (*Id*. ¶ 18). She continues to experience difficulties with romantic relationships. (*Id*. ¶ 19).

## SENTENCING-GUIDELINE COMPUTATION

Officer Hawkins calculated the applicable sentencing-guideline range as follows:

**Count 1:** Sexual Abuse, 18 U.S.C. §§ 1153, 2242(2), & 2246(2)(A)

| ACTION | NUMBER | REFERENCE |
|---|---|---|
| Base-Offense Level | 30 | U.S.S.G. § 2A3.1(a)(2) (Criminal sexual abuse) |
| Adjustment | -3 | *Id.* § 3E1.1(a), (b) (Acceptance of responsibility) |
| Adjustment | +2 | *Id.* § 3A1.1(b)(1) (Vulnerable victim)[1] |
| Adjusted-Offense Level | 29 | |
| Criminal-History Category | I | |
| Advisory Sentencing Range | 87-108 mos. | *Id.* § 5A |
| | 7.25-9 yrs. | |

(Doc. 30, ¶¶ 22-31, 35, 66). The United States agrees with Officer Hawkins' calculations.

## OBJECTIONS & CORRECTIONS TO THE PRE-SENTENCE REPORT

1. The parties' agreement is to a specific sentence of five-years imprisonment. (Doc. 27, ¶ 11a). Officer Hawkins stated the parties have agreed to "a specific sentence of *not more than* 5 years imprisonment [.]" (Doc. 30, ¶ 3) (emphasis added). Officer Hawkins later correctly stated "the parties stipulated to a specific sentence of five years imprisonment." (*Id.* ¶¶ 67, 80, 82). The statement in paragraph three thus appears to be an error.

2. It appears to be an open question in the Tenth Circuit whether the vulnerable-victim sentencing adjustment, U.S.S.G. § 3A1.1(b)(1), applies in prosecutions for 18 U.S.C. § 2242(2). *See United States v. Calvert-Cata*, 2017 WL 4785957, at *5 (D.N.M. Oct. 21,

---

[1] Officer Hawkins emailed the parties on April 23, 2024, at 11:36 am, stating that she intended to apply the vulnerable-victim enhancement "due the victims [*sic*] mental and physical status at the time the incident occurred, which the defendant should have known of the victim's vulnerability." Officer Hawkins did not include this proposed adjustment in her original report.

5

2017) (unpublished) (making this observation). One could make a reasonable argument against application of the adjustment by stating that the vulnerable-victim adjustment is already baked into the sentencing-guideline range for violations of 18 U.S.C. § 2242(2). This exact argument, however, was discarded by Judge Browning in 2017. *Calvert-Cata*, 2017 WL 4785957, at *5. The United States was unable to locate any materials suggesting that the law has evolved or changed since this unpublished opinion. The United States thus has no objection to inclusion of the vulnerable-victim adjustment.

## **ANALYSIS UNDER 18 U.S.C. § 3553(a)**

In consideration of the following, the United States recommends this Court sentence Defendant to five years in the Bureau of Prisons.

1. **Nature and circumstances of the offense and Defendant's history and characteristics.**

A sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). This analysis "is aimed at distinguishing among defendants who commit a particular offense or type of offense." *United States v. Irey*, 612 F.3d 1160, 1202 (11th Cir. 2010).

The nature and circumstances of this crime are troubling. As stated above, (pp. 1-4), Defendant quietly raped a drunk woman under the cover of night, hoping to get away with his crime. When confronted, he quickly concocted a story in which the unconscious woman consented to the act. But despite the government's perceived facts, Defendant's crime might prove difficult to present to jurors because D.Q. cannot testify to the crime itself. This case would thus rest entirely upon Defendant's cousin, Aisha Aguino, testifying that she saw Defendant vaginally penetrate D.Q. without D.Q.'s consent. And while Aisha has never wavered that she saw penetration occur,

6

resting an entire case upon Aisha's viewpoint (which occurred after a night of drinking in a dimly lit room) is a gamble, particularly given Aisha's familial connection to Defendant, her general lack of friendship with D.Q., and her partner Joseph's inability to see any penetration. It is for those reasons that the United States stuck this agreement.

Officer Hawkins also noted several characteristics of Defendant that arguably cut towards a lesser sentence: (1) Defendant completed tribal and federal pretrial supervision without incident, (Doc. 30, ¶¶ 8, 81); (2) Defendant has a minimal criminal history, (*id*. ¶¶ 36-41, 81); (3) Defendant has a close-knit and supportive family structure, (*id*. ¶ 47); Defendant is in sound physical condition and has no mental-health concerns, (*id*. ¶¶ 51-52, 81); Defendant has obtained his GED, (*id*. ¶ 81); and Defendant's substance-abuse history (albeit concerning) is confined to alcohol consumption and marijuana use, (*id*. ¶¶ 54-55).

2. **Need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, adequate deterrence, and to protect the public from further crimes of Defendant.**

A sentence of imprisonment is necessary to reflect the seriousness of these crimes and provide adequate deterrence. Deterrence includes both general deterrence and specific deterrence. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). While general deterrence's goal is to "deter others from committing the same crime by demonstrating its disadvantageous consequences," the goal of specific deterrence is "to incapacitate the wrongdoer, so as to protect society from further criminal activity." *United States v. Irey*, 612 F.3d 1160, 1227 (11th Cir. 2010). An overly lenient sentence "signals to others that it is not a big deal to repeatedly defy United States' laws." *United States v. Corchado-Aguirre*, No. 15-2115, 2015 WL 6123216, at *3 (10th Cir. Oct. 19, 2015) (unpublished).

The United States believes there is significant general-deterrent value in prosecuting these sorts of sex-based Indian Country crimes. Criminal prosecution of these cases serves to increase public perception—to law-abiding citizens and criminals alike—that those who choose to commit these crimes will inevitably be caught and punished. *See United States v. Corchado-Aguirre*, 2015 WL 10383207, at *6, 14 (D.N.M. Aug. 31, 2015) (quoting and "generally agree[ing]" with this research and stating the additional proposition that "police deter crime when they do things that strengthen a criminal's perception of the certainty of being caught."). In other words, if potential offenders believe they will be caught and prosecuted, crimes like the one Defendant committed will occur less frequently. Certainty of prosecution, it appears, might be a far better general deterrent than ratcheting up a given criminal's sentence by five, 10, or 20 years. *See id.* at *17. In any event, the United States believes the community will be well served by seeing that sexual abuse occurring in Indian Country is prosecuted with a sentence of incarceration.

3. **Sentencing Guidelines for the applicable category of offense committed by the applicable category of Defendant.**

This Court must consider under 18 U.S.C. § 3553(a)(4) the sentencing range established by the U.S.S.C. for the applicable category of offense committed by the applicable category of defendant. The Supreme Court has recognized that even in the post-*Booker* world "the [Sentencing] Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise…'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007). "In the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve 3553(a)'s objectives.'" *Id*.

The applicable guideline range for this crime is 87 to 108 months. The parties' agreement

8

is to a specific sentence of 60-months imprisonment. (Doc. 27, ¶ 11a). Of course, there is no presumption that a sentence outside the Guideline range is unreasonable. *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir. 2008). While the parties' agreement is 27-months shy of the low-end of the applicable guideline range, the agreement to this five-year sentence was a measured concession by both parties—Defendant recognizing the possibility of a higher sentence after a trial conviction and the United States appreciating the inherent flaws in its case.

4. **Need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct.**

This court must consider the need to avoid unwarranted sentence disparities among defendants situated similarly. 18 U.S.C. § 3553(a)(6). A sentence within the statutory limit accounting for the guideline range is the best approach to preventing unwarranted sentencing disparities between similarly situated defendants. The values of the justice system are undermined when there is substantial variance in sentences for similar offenses between judicial districts and even between individual judges in a single district. This factor is designed to avoid nationwide disparities in sentencing. *United States v. Garza*, 1 F.3d 1098, 1100 (10th Cir. 1993).

Through JSIN research, Officer Hawkins noted 14 defendants similarly situated, for which the average incarceration sentence was 51 months, and the median incarceration sentence was 52 months. (Doc. 30, ¶ 83). These figures, however, are no longer pertinent given Officer Hawkins' inclusion of the vulnerable-victim sentencing adjustment.

**CONCLUSION & REQUEST FOR RELIEF**

For the reasons stated herein, the United States asks this Court to:

- Accept Defendant's guilty plea and the parties' *Plea Agreement*, (Doc. 27);

- Sentence Defendant to a five-year period of incarceration, (*id*. ¶ 11a);

- Set a term of supervised release of five years to life, (Doc. 30 ¶¶ 68-69); and

- Impose a $100 special assessment and a $5,000 assessment pursuant to the Justice for Victims of Trafficking Act of 2015, (*id*. ¶ 74).

Respectfully submitted,

**ALEXANDER M.M. UBALLEZ**
United States Attorney

_____
ZACH JONES
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274
zachary.jones2@usdoj.gov

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will cause a copy of this filing to be sent to counsel for Defendant, Buck Glanz.

_____
ZACH JONES
Assistant United States Attorney